IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

HARRIET MURPHY and WILLIAM )
MURPHY, individually and on behalf of a )
class of similarly-situated individuals, )
        Plaintiffs, )
         )
        vs )  Civil Action No. 06-1343
         )
MID EAST OIL COMPANY, a Pennsylvania )
corporation, et al., )
        Defendants. )

REPORT AND RECOMMENDATION

I. <u>Recommendation</u>:

        It is respectfully recommended that the defendants' partial motion to dismiss the complaint (Document No. 20) be granted as to Counts III and IV and denied in all other respects.

II. <u>Report</u>:

        Presently before the Court is the defendants' motion to dismiss Counts II, III, IV, VI, VII and VIII of the complaint, as well as certain named defendants pursuant to F.R.Civ.P. 12(b)(6), and to strike paragraphs 5-62 of the complaint pursuant to F.R.Civ.P. 12(f). For reasons discussed below, the defendants' partial motion to dismiss should be granted in part and denied in part.

        The plaintiffs, Harriet Murphy and William Murphy, commenced this purported class action on behalf of investors in various Mid East 2003 Natural Gas Programs, which are Pennsylvania Limited Partnerships. Members of the proposed class of investors are listed as plaintiffs in paragraphs 5-62 of the complaint.

Prior to investing in the Mid East 2003 Natural Gas Programs, the plaintiffs were provided with Private Placement Memoranda which described the Programs and afforded them the option to purchase partnership interests therein. (Complaint at ¶ 85). Investors in these Natural Gas Programs became general partners or limited partners in the Programs. (Id. at ¶¶ 84-85). The primary purpose of these partnerships was to explore, develop, produce, and market natural gas from wells drilled in certain geographic areas found to be productive (Id. at ¶ 84). The primary objective of each Natural Gas Program was to allow investors to realize cash distributions of any net profits from the sale of natural gas that was produced, to receive certain tax benefits, to realize an appreciation on their investment through escalating gas prices, increased real property values, and to receive profits from the sale of the properties. (Id. at ¶ 88).

The Murphys invested $100,000 into the Mid East 2003-3 Natural Gas Program. (Id. at ¶ 4). The managing general partner of the Mid East 2003-3 Natural Gas Program was defendant Baron East 2003-3, Inc. (Id. at ¶¶ 66, 74). Defendants Mark Thompson and Frank Garufi were officers and directors of Baron East 2003-3, Inc. (Id. at ¶¶ 75-76).

The Murphys allege that prior to investing in the limited partnerships, Mark Thompson told investors that the Natural Gas Programs' wells should provide them a current profit recovery of 40% per annum before any potential sale of the fields, at which time an additional profit was anticipated (Id. at ¶ 90); that in reality, the wells drilled pursuant to the Programs averaged a 7% to 10% profit (Id. at ¶ 91); that in a letter dated December 6, 2004, Mark Thompson informed investors in the Natural Gas Programs that Mid East Oil Company, the operator and manager of the Programs' wells, had received offers to purchase its Pine Glen Field, and that the majority interest holders opted to sell to North Coast Energy for a price that

was less than anticipated (Id. at ¶ 92); and that in his letter of December 6, 2004, Thompson advised investors that if they voted to sell their wells to North Coast Energy, they could reinvest the proceeds in wells in other areas, or retain the proceeds according to their ownership interest, whereas if they voted not to sell their wells, North Coast Energy would make certain monthly distributions to them (Exhibit C to the complaint).  To clarify investors' options, Capital Growth Financial Securities, LLC sent a letter to Mark Thompson dated December 13, 2004, which he accepted on December 14, 2004 (the "letter agreement"), whereby Thompson confirmed that his proposal to investors in the Programs was as follows:

1. The Programs will sell the existing wells and commence drilling in a new field;
2. The investors in the Programs will receive credit for 100% of their original investment in the new wells;
3. [T]he investors will receive, commencing as of December 1, 2004, a current monthly distribution equal to 20% per annum, on the amount of their original investment, until all of the new wells are drilled and in line.

(Exhibit D to the complaint).

The plaintiffs contend that on February 5, 2005, in contravention of his aforesaid proposal to investors, Mark Thompson executed a letter which indicated that 20% return checks to investors would not be forthcoming (Complaint at ¶ 95); that investors also have not received credit for 100% of their original investment in the 2003 Natural Gas Programs, nor received disbursements for monies generated by the sale of the Programs' wells (Id. at ¶¶ 96-97); and that investors have not been informed of the status of the sale of wells in the Programs, or told how monies have been utilized by the Programs (Id. at ¶ 97).

The Murphys have filed an eight-count purported class action complaint against numerous Mid East Natural Gas Programs and Oil and Gas Programs, their operators and

managers, and others affiliated with them, for allegedly breaching the letter agreement and engaging in tortious conduct in connection therewith. Named as defendants in the complaint are Mid East 2003-1 Natural Gas Program, Mid East 2003-2 Natural Gas Program, Mid East 2003-3 Natural Gas Program, Mid East 2003-1 Oil & Gas Program, Mid East 2003-2 Oil & Gas Program, Mid East 2003-3 Oil & Gas Program, Mid East Oil Company, Mid Crest Drilling Co., Inc., Mid East Gas Gathering, Inc., Baron East 2003-1, Inc., Baron East 2003-2, Inc., Baron East 2003-3, Inc., Mark Thompson, an officer and director of the Baron East 2003 entities and President of Mid East Oil Company, and Frank Garufi, an officer and director of the Baron East 2003 entities and Mid Crest Drilling Co., Inc.

In the eight-count complaint, Counts I through VI are brought against defendants Mid East Oil Company, Baron East (which is said to encompass Baron East 2003-1, Inc., Baron East 2003-2, Inc., and Baron East 2003-3, Inc.), and Mark Thompson under these theories: Count I - breach of contract; Count II - fraud/negligent misrepresentation; Count III - misappropriation; Count IV - conversion; Count V - action for accounting; and Count VI - violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-1, et seq. ("UTPCPL"). Counts VII and VIII are asserted against Baron East as follows: Count VII - breach of fiduciary duty; and Count VIII - breach of the duty of loyalty. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1332 and 1367.

<u>Motion to dismiss all defendants except for Mid-East Oil Company, Baron East 2003-3, Inc. and 2003-3 Natural Gas Program:</u>

The defendants have filed a partial motion to dismiss the complaint on several grounds. First, they argue that the Murphys fail to state a claim against any defendants other than Mid East Oil Company, Baron East 2003-3, Inc., and Mid East 2003-3 Natural Gas Program

because: (1) the Murphys failed to assert their causes of action directly against any of the other named defendants with the exception of defendant Thompson; (2) the Murphys allege that their investment related solely to the Mid East 2003-3 Natural Gas Program, such that they have no standing to prosecute rights against the entities involved in the Mid East 2003-1 and 2003-2 Natural Gas Programs; (3) the Mid East Oil & Gas Programs do not exist; and (4) individual defendants Thompson and Garufi are identified as officers and directors of Baron East and/or Mid East Oil Company and Mid Crest Drilling, Co., such that they cannot be held individually liable for the debts or obligations of those entities absent piercing the corporate veil.

In reviewing a motion to dismiss, all well-pleaded allegations of the complaint must be accepted as true and viewed in a light most favorable to the non-movant. Estelle v. Gamble, 429 U.S. 97 (1976); Shaev v. Saper, 320 F.3d 373, 375 (3d Cir. 2003).

As to the first argument above, we disagree with the defendants that the Murphys' failure to list all defendants in the captions of the counts of their complaint mandates dismissal of the unnamed defendants. A party may be properly named as a defendant if the allegations in the body of the complaint make it clear that the party is intended as a defendant. Yeseta v. Baima, 837 F.2d 380, 382-83 (9th Cir. 1988), citing, Rice v. Hamilton Air Force Base Commissary, 720 F.2d 1082, 1085 (9th Cir. 1983), and Greenwood v. Ross, 778 F.2d 448, 451-52 (8th Cir. 1985) (the failure to list a defendant in the caption does not mean that the action cannot be maintained against him where he is identified in the body of the complaint). Accord, Jones v. Louisiana, 764 F.2d 1183 (5th Cir. 1985), and Madara v. Singular Music Publishing Co., 1987 WL 10115, *2 (E.D.Pa., Apr. 28, 1987) ("a defective caption is not fatal when the court can ascertain the proper party from the body of the complaint").

Here, all named defendants are listed in the caption of the complaint, were served with process, and are identified in ¶¶ 63-76 of the complaint. While the captions of the counts of the complaint list only Mid East Oil Company, Baron East and/or Mark Thompson as defendants, the body of the complaint makes reference to the other defendants. Furthermore, it appears that all defendants maintain the same principal place of business, i.e., 225 Airport Road in Indiana, PA, 15701, and the Murphys insist they have documents which suggest that the various entities named as defendants overlap in their functioning. Based on the foregoing, and as the parties have not yet engaged in discovery, it would be premature to dismiss the defendants not named in the captions of the counts of the complaint.

We also cannot say at this juncture that the Murphys lack standing to prosecute rights against those entities involved in the Mid East 2003-1 and 2003-2 Natural Gas programs. The Murphys allege that they "are investors in certain Mid East Natural Gas Programs and have invested $100,000 into the Mid East 2003-3 Natural Gas Program". (Complaint at ¶ 4). The complaint also provides that "Plaintiffs are investors, both general and limited partners, in the Mid East 2003-1 Natural Gas Program, Mid-East 2003-2 Natural Gas Program and Mid East 2003-3 Natural Gas Program" (Id. at ¶ 84). Based on these pleadings, it is premature to rule that the Murphys lack standing to prosecute rights against all entities involved in the Mid East 2003 Natural Gas Programs.

The defendants also seek to dismiss the named Mid East Oil & Gas Programs, claiming they do not exist. However, as the defendants have not proffered evidence to support this contention, the Mid East Oil & Gas Programs should not be dismissed.

We also cannot say that the complaint fails to state a claim against individual

defendants Thompson and Garufi.  Under Pennsylvania law, "an officer of a corporation who takes part in the commission of a tort by the corporation is personally liable" for the tortious act. Wicks v. Milzoco Builders, 470 A.2d 86, 90 (Pa. 1983).   Individual liability may also attach to an officer of a corporation if "he specifically directed the particular act to be done or participated, or cooperated therein."  Id.  Further, an officer may incur liability for wrongful acts committed behind the veil of a "sham corporation".  Id. at 89-90.  Here, Thompson and Garufi are said to be officers and directors of Baron East and Mid Crest Drilling Company, and Thompson is the President of Mid East Oil Company (Id. at ¶¶ 75-76).  The plaintiffs contend that Thompson engaged in misrepresentation and other tortious acts in his dealings with investors in the Natural Gas Programs, and that Baron East engaged certain affiliated defendant companies which were under direct or common control with one another to carry out the Programs' affairs.  For reasons discussed above, the motion to dismiss all defendants other than Mid East Oil Company, Baron East 2003-3, and Mid East 2003-3 Natural Gas Program should be denied.

Motion to dismiss all claims except for Counts I and V:

In further support of their motion to dismiss, the defendants argue that with the exception of the claims in Count I (breach of contract) and Count V (action for an accounting), the plaintiffs fail to state a viable claim.  According to the defendants, the claims in Count II (fraud/negligent misrepresentation), Count III (misappropriation), Count IV (conversion), Count VII (breach of fiduciary duty), and Count VIII (breach of the duty of loyalty) are barred by the "gist of the action" doctrine, as they seek to redress breaches of obligations arising from the letter agreement and partnership agreement.  With respect to Count VI (the UTPCPL claim), the defendants insist that the Murphys' investment is not actionable under the UTPCPL.

We agree that Counts III and IV are barred by the gist of the action doctrine. Under Pennsylvania law, "courts are cautious about permitting tort recovery based on contractual breaches." Pittsburgh Construction Co. v. Griffith, 834 A.2d 572, 581 (Pa.Super. 2003), citing Glazer v. Chandler, 200 A.2d 416, 418 (Pa. 1964). Thus, courts utilize the "gist of the action" doctrine, which "is designed to maintain the conceptual distinction between breach of contract claims and tort claims [by] preclud[ing] plaintiffs from recasting ordinary breach of contract claims into tort claims." eToll, Inc. v. Elias/Savion Advertising, Inc., 811 A.2d 10, 14 (Pa.Super. 2002). Also see, Bohler-Uddeholm America, Inc. v. Ellwood Group, 247 F.3d 79, 103 (3d Cir. 2001), cert. denied, 534 U.S. 1162 (2002) (stating that Pennsylvania courts utilize the "gist of the action" test "to determine whether tort claims that accompany contract claims should be allowed as freestanding causes of action or rejected as illegitimate attempts to procure additional damages for a breach of contract").

In Bohler-Uddeholm, supra, the Third Circuit Court of Appeals discussed the "gist of the action" test as follows:

> to be construed as a tort action, the [tortious] wrong ascribed to the defendant must be the gist of the action with the contract being collateral.... [T]he important difference between contract and tort actions is that the latter lie from the breach of duties imposed as a matter of social policy while the former lie for the breach of duties imposed by mutual consensus.

Id., quoting Redevelopment Auth. of Cambria County v. International Ins. Co., 685 A.2d 581, 590 (Pa.Super. 1996), cert. denied, 695 A.2d 787 (Pa. 1997). Stated differently, a "[b]reach of contract, without more, is not a tort." USX Corp. v. Prime Leasing Inc., 988 F.2d 433, 440 (3d Cir. 1993). Where alleged tortious conduct arises from the same facts supporting a breach of

contract claim, the tort claim cannot lie unless it is the "gist of the action", with the contract being collateral.  Id.

        Here, the claims for misappropriation in Count III, and conversion in Count IV are barred by the "gist of the action" doctrine, as they arise from the same facts which support the plaintiffs' breach of contract claim and are not independent therefrom.  That is, in Count I, Mid East Oil Company, Baron East and Mark Thompson are said to have breached the terms of the letter agreement and partnership agreement in these ways: by failing to obtain returns consistent with those anticipated by investors; by failing to credit investors for 100% of their investment in the initial Programs' wells when drilling new wells; by failing to make monthly distributions to investors equal to 20% per annum on the amount of their original investment in the Programs until all new wells were drilled and in line; and by failing to disburse monies to investors that were generated by the sale of old wells in the Programs (Complaint at ¶¶ 102-107).

        The claims for misappropriation and conversion in Counts III and IV respectively arise from the defendants' nonperformance of contractual duties, as Mid East Oil Company, Baron East, and Mark Thompson are said to have improperly retained monies belonging to the plaintiffs due to their failure to comply with the terms of the letter agreement and partnership agreement. (Complaint at ¶¶ 114-116, 120-122).  Since the claims in Counts III and IV arise from and are dependent on the defendants' non-compliance with the terms of the agreements, the gist of those claims is breach of contract.

        Count II is premised on fraud/negligent misrepresentation in pre-contract circumstances.  For instance, the plaintiffs contend that "[p]rior to [their] investing in the limited partnerships", Mark Thompson promised investors a profit recovery from wells drilled in the

Programs that far exceeded their average rate of profit (Complaint at ¶¶ 90-91). To the extent Thomson's alleged misrepresentation as to the profitability of the Natural Gas Programs induced the plaintiffs to invest therein, it is the gist of the claim and should not be dismissed. The plaintiffs also contend that Mid East Oil Company, Baron East and Thompson made false or misleading representations in the letter agreement which they did not intend to perform, thereby inducing the plaintiffs to enter into said agreement and remain investors. (Complaint at ¶¶ 109-111). Since these misrepresentations are the gist of Count II, the claim should not be dismissed.

Likewise, the claims for breach of fiduciary duty in Count VII and breach of the duty of loyalty in Count VIII are not barred by the "gist of the action" doctrine. That is because Baron East, the special limited partner and managing general partner for the partnerships in the Natural Gas Programs, is said to have breached its duties to the plaintiffs by engaging in complained-of acts for which it is accountable as a fiduciary to the partnership. (Complaint at ¶¶ 139-143, 146-149). The gist of these claims is not breach of contract, as the parties' obligations are not defined by the terms of a contract, but rather by the larger social policies embodied in the law of torts. Bohler-Uddeholm, 247 F.3d at 104; Bash v. Bell Telephone Co., 601 A.2d 825, 830 (Pa.Super. 1992).

In Bohler-Uddeholm, the Court examined claims of breach of fiduciary duty and misappropriation of trade secrets arising from a contract dispute, and ruled that the claim for breach of fiduciary duty was the "gist of the action", while the misappropriation of trade secrets claim concerning the plaintiff's "know-how" was embodied by the parties' contract. 247 F.3d at 104-106. In differentiating between the claims, the Court found that since the parties before it were shareholders in a joint venture, the breach of fiduciary duty claim was imposed as a matter

of social policy requiring fair dealings between joint venturers, Id. at 104-105; hence, the parties had fiduciary obligations "that went well beyond the particular obligations contained in the[ir] Agreement", such that the contract was collateral to the breach of fiduciary claim. Id. at 105. Conversely, the misappropriation of trade secrets claim relating to plaintiff's "know-how" was contractually prohibited, such that the gist of the claim was breach of contract. Id. at 106.

  Here, as in Bohler-Uddeholm, the parties had fiduciary obligations that went beyond their agreements due to their relationship in a limited partnership. Under Pennsylvania law, "[t]here is a fiduciary relationship between partners." Clement v. Clement, 260 A.2d 728, 729 (Pa. 1970). Indeed, "[t]he general partner of a limited partnership owes the partnership and his partners the fiduciary duty of loyalty." Haymond v. Lundy, 2000 WL 804432, *14 (E.D.Pa., June 22, 2000). Since the plaintiffs' claims for breach of fiduciary duty (Count VII) and breach of the duty of loyalty (Count VIII) are imposed as a matter of social policy, they are not barred by the gist of the action doctrine.

  In Count VI, the Murphys contend that Mid East Oil Company, Baron East and Mark Thompson violated the UPTCPL by making false or misleading representations in the letter agreement which the plaintiffs relied on in effectuating their investments in the Natural Gas Programs. (Complaint at ¶¶ 130-136). In moving to dismiss Count VI, the defendants argue that the Murphys' investment in the Programs is not actionable under the UTPCPL.

  The UTPCPL provides a private right of action to "[a]ny person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property... as a result of the use or employment by any person of a method, act or practice declared unlawful by... this act..." 73 P.S. § 201-9.2. While the

UTPCPL does not define the term "purchaser", "[t]he statute unambiguously permits only persons who have purchased or leased goods or services to sue." Balderston v. Medtronic Sofamor Danek, Inc., 285 F.3d 238, 241 (3d Cir. 2002). Thus, we must determine if the Murphys' investment in the Programs entails the purchase of goods or services, so as to fall within the purview of the UTPCPL.

In Algrant v. Evergreen Valley Nurseries Limited Partnership, 126 F.3d 178, 187 (3d Cir. 1997), our Court of Appeals predicted that the Pennsylvania Supreme Court would hold that "investment securities are not goods under the UTPCPL and therefore the UTPCPL does not provide a cause of action for a party alleging fraud in the securities themselves." Under Pennsylvania law, a "security" is deemed to encompass an interest in a limited partnership. 70 P.S. § 1-102(t).

In Algrant, the defendants financed the purchase of stock in a nursery by selling plaintiffs units in a limited partnership pursuant to a private placement memorandum ("PPM"), after which plaintiffs complained that defendants over-valued the securities and failed to disclose facts in the PPM, including self-dealing in the purchase of the stock and the price paid for the interest in land. Id. at 180. The Algrant Court dismissed the plaintiffs' claim under the UTPCPL, explaining:

> the plaintiffs have alleged that the fraud was in the valuation fixed by the issuer of the investment securities themselves and misrepresentations the issuer made concerning these securities. Plaintiffs have not alleged any fraudulent conduct in the actual sale of the securities.

126 F.3d at 187.

Algrant teaches that investment securities are not goods for purposes of the

12

UTPCPL, and that the sale of investment securities does not fall within its reach if the plaintiffs allege fraud in the securities themselves.  Id.  However, the Court in Algrant acknowledged that where a plaintiff alleges fraud in the actual sale of securities purchased, such as in receiving inaccurate information or fraudulent assurances concerning the securities (so as to constitute fraud in the transaction, or for services provided), it may state a claim under the UTPCPL.  Id. at 187-188, citing S. Kane & Son Profit Sharing Trust v. Marine Midland Bank, 1996 WL 200603 (E.D.Pa., Apr. 25, 1996); Advest Inc. v. Kirschner, 1994 WL 18592 (E.D.Pa., Jan. 21, 1994); Denison v. Kelly, 759 F.Supp. 199 (M.D.Pa. 1991); McCullough v. Shearson Lehman Bros., Inc., 1998 WL 23008 (W.D.Pa., Feb. 18, 1988).

      Here, the plaintiffs allege that Mark Thompson induced them to invest in the limited partnerships by falsely representing their profit recovery.  (Complaint at ¶¶ 90-91).  They also contend that Thompson, Mid East Oil Company and Baron East made false or misleading representations in the letter agreement, which induced them to remain participants in the Natural Gas Programs instead of recouping their investments.  (Complaint at ¶¶ 109-111).  Since these claims may be construed as constituting fraud in the transaction or for services provided, Count VI should not be dismissed.

Motion to dismiss or strike ¶¶ 5-62 of the complaint:

      Lastly, the defendants move to strike paragraphs 5-62 of the complaint, which identify investors in the Natural Gas Programs as proposed class member plaintiffs.  The defendants argue that while these named investors are identified in the complaint and denominated as plaintiffs, none of them appear in the caption of the complaint, as is required under F.R.Civ.P. 10(a).

In pertinent part, Rule 10(a) provides: "In the complaint the title of the action shall include the names of all the parties". As discussed above, however, "a defective caption is not fatal when the court can ascertain the proper party from the body of the complaint". Madara, supra, 1987 WL 10115 at *2; accord, Yeseta, supra, 837 F.2d at 382-83, Greenwood, supra, 778 F.2d at 451-52, and Jones, supra, 764 F.2d at 1185-86. Indeed, the purpose of Rule 10(a) is "to clearly identify for the Court and the public the parties to an action and to provide clear notice to recipients of the complaint of their role, if any, in the action". Thompson v. Kramer, 1994 WL 702927, *11 (E.D.Pa., Dec. 13, 1994). This the plaintiffs have done.

As previously mentioned, the caption of the complaint lists all defendants, and the defendants are identified in ¶¶ 63-76 of the complaint. The caption of the complaint also lists plaintiffs Harriet Murphy and William Murphy "individually and on behalf of a class of similarly-situated individuals". Since the Murphys commenced this suit as a proposed class action, they need not name all class members in the caption of the complaint. Pursuant to F.R.Civ.P. 23(a), "[o]ne or more members of a class may sue or be sued as representative parties on behalf of all...". Here, the complaint identifies the class of "similarly-situated individuals" as plaintiffs in ¶¶ 5-62 of the complaint. Since the Court can ascertain the parties to this suit, and their role, if any, in the action, ¶¶ 5-62 of the complaint should not be striken.

Therefore, it is recommended that the defendants' partial motion to dismiss the complaint be granted as to Counts III and IV and denied in all other respects.

Within thirteen (13) days after being served with a copy, any party may serve and file written objections to this Report and Recommendation. Any party opposing the objections

shall have seven (7) days from the date of service of objections to respond thereto.  Failure to file timely objections may constitute a waiver of any appellate rights.

                                                      Respectfully submitted,

                                                     s/ ROBERT C. MITCHELL
                                                   United States Magistrate Judge

Dated: January 18, 2007